**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| AUSTIN NEUROSPINE, PLLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 1:25-cv-00142-ADA |
| | § | |
| HEALTH CARE SERVICE CORPORATION, | § | |
| A MUTUAL LEGAL RESERVE COMPANY | § | |
| D/B/A BLUE CROSS AND BLUE SHIELD | § | |
| OF TEXAS; BLUE CROSS OF | § | |
| CALIFORNIA D/B/A ANTHEM BLUE | § | |
| CROSS; CALIFORNIA PHYSICIANS' | § | |
| SERVICE D/B/A BLUE SHIELD OF | § | |
| CALIFORNIA; BLUE CROSS AND BLUE | § | |
| SHIELD ASSOC.; BLUE CROSS | § | |
| ASSOCIATION; AND BLUE SHIELD | § | |
| ASSOCIATION, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................1

III.    LEGAL STANDARD ..........................................................................................3

    A.    MOTION TO DISMISS FOR LACK OF STANDING. .....................................3

    B.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION. ...........3

    C.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. .......................4

IV.    ARGUMENT .......................................................................................................4

    A.    PLAINTIFF LACKS STANDING TO BRING ITS ERISA CAUSE OF
        ACTION. ..............................................................................................................4

    B.    PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION AS
        TO ITS NON-ERISA CAUSES OF ACTION. ....................................................6

        1.    BCBSMA IS NOT SUBJECT TO GENERAL JURISDICTION IN
            TEXAS. ..................................................................................................6

        2.    BCBSMA IS NOT SUBJECT TO SPECIFIC JURISDICTION IN
            TEXAS. ..................................................................................................7

    C.    THE COURT SHOULD DISMISS THE SAC FOR PLAINTIFF'S
        FAILURE TO STATE A CLAIM FOR ANY OF ITS CAUSES OF
        ACTION. ..............................................................................................................9

        1.    PLAINTIFF'S CLAIM FOR BENEFITS UNDER ERISA FAILS
            TO STATE A CLAIM FOR RELIEF. ....................................................9

        2.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS TO
            STATE A CLAIM FOR RELIEF. .........................................................10

            a.    PLAINTIFF FAILS TO ALLEGE A MEETING OF THE
                MINDS ON PRICE. ..................................................................11

            B.    PLAINTIFF FAILS TO ALLEGE AN EXCHANGE OF
                CONSIDERATION. ..................................................................13

            c.    PLAINTIFF FAILS TO SPECIFY WHAT BCBSMA DID
                IN BREACH OF THE PURPORTED AGREEMENT. ..............14

        3.    PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS TO
            STATE A CLAIM FOR RELIEF. .........................................................15

    D.    PLAINTIFF'S FRAUD-BASED CLAIMS FAIL TO STATE A CLAIM
        FOR RELIEF. .....................................................................................................16

        1.    PLAINTIFF IMPROPERLY GROUP-PLEADS ITS FRAUD-
            BASED CLAIMS, THEREBY FAILING TO SATISFY RULE
            9(B). .....................................................................................................17

# TABLE OF CONTENTS
(continued)

**Page**

2.  PLAINTIFF CANNOT STATE A CLAIM FOR FRAUD/FRAUDULENT INDUCEMENT............................................17

3.  PLAINTIFF CANNOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION....................................................18

4.  PLAINTIFF CANNOT STATE A CLAIM FOR CIVIL CONSPIRACY.....................................................................19

V.   CONCLUSION ..........................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambulatory Infusion Therapy Specialists, Inc. v. Unicare Life and Health Ins.
Co.*, Civ. No. H-06-1857, 2007 WL 1520994 (S.D. Tex. May 22, 2007)................................12

*Angel Jet Servs., LLC v. Health & Welfare Plan of Hollis Roofing*,
No. CV-09-02131-PHX-ROS, 2010 2010 WL 11405083 (D. Ariz. Apr. 1,
2010)................................................................................................................................................8

*Angel v. La Joya Indep. Sch. Dist.*,
717 F. App'x 372 (5th Cir. 2017)......................................................................................20

*Armijo v. ILWU-PMA Welfare Plan*,
No. CV 15-01403-MWF, 2017 WL 10718576 (C.D. Cal. Aug. 1, 2017).............................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................................................4

*Avialae S. De R.L. De C.V. v. Cummins Inc.*,
472 F. Supp. 3d 340 (W.D. Tex. 2020)...........................................................................14

*Bayada Nurses, Inc. v. Blue Cross Blue Shield of Mich.*,
No. CIV. A. 08-1241, 2008 WL 2945388 (E.D. Pa. July 30, 2008).......................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................................4

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ...................................................................... 17, 19, 21

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009)........................................................... 17, 19

*Bey v. Rosamond*,
No. 4:21-cv-302-ALM-KPJ, 2022 WL 636728 (E.D. Tex. Feb. 25, 2022) ...........................11

*Black v. Experian Info. Sols., Inc.*,
No. 4:21 -CV-04231, 2023 WL 2267266 (S.D. Tex. Feb. 28, 2023) ...................................15

*C.C. v. Cal. Physicians' Serv.*,
No. 4:21- cv-00010-DN-PK, 2021 WL 3207853 (D. Utah July 29, 2021).............................8

*Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*,
118 F. Supp. 2d 1002 (C.D. Cal. 2000).........................................................................12

*Cell Sci. Sys. Corp. v. La. Health Serv.*,
   804 F. App'x 260 (5th Cir. 2020) ................................................................................3, 5

*Centennial Bank v. Holmes*,
   717 F. Supp. 3d 542 (N.D. Tex. 2024)................................................................................21

*Chapman v. Newrez, LLC*,
   No. 4:21-cv-03711, 2023 WL 2247053 (S.D. Tex. Feb. 27, 2023)......................................20

*Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*,
   No. 9:18-CV-81761, 2020 WL 3547047 (S.D. Fla. June 30, 2020) .....................................12

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*,
   615 F.3d 364 (5th Cir. 2010) .............................................................................................8, 9

*Cornish v. Corr. Servs. Corp.*,
   402 F.3d 545 (5th Cir. 2005) ..................................................................................................4

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ................................................................................................................4

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*,
   938 F.3d 246 (5th Cir. 2019) ..................................................................................................5

*DLR, LLC v. Montoya*,
   465 F. Supp. 3d 676 (N.D. Tex. 2020)....................................................................................4

*Electrostim Med. Servs. v. Health Care Serv. Corp.*,
   614 F. App'x 731 (5th Cir. 2015)...........................................................................................12

*Experience Infusion Ctrs., LLC v. Flowers Specialty, Foodservice Sales, Inc.*,
   No. H-19-1721, 2020 WL 32331 (S.D. Tex. Jan. 2, 2020) ......................................................5

*Frank v. P N K (Lake Charles) L.L.C.*,
   947 F.3d 331 (5th Cir. 2020) ..................................................................................................7

*Fustok v. UnitedHealth Grp., Inc.*,
   No. 12-cv-787, 2012 WL 12937486 (S.D. Tex. Sep. 6, 2012)..............................................16

*Harbour v. Heyl Truck Lines, Inc.*,
   No. 3:24-CV-0183-D, 2024 WL 1317805 (N.D. Tex. Mar. 27, 2024)...................................4

*State ex rel. Health Plans v. Nines*,
   852 S.E.2d 251 (W. Va. 2020).................................................................................................8

*Ho v. Flotek Indus., Inc.*,
   248 F. Supp. 3d 847 (S.D. Tex. 2017), *aff'd sub nom. Alaska Elec. Pension
   Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019)......................................................2

*Infectious Disease Drs., P.A. v. BlueCross BlueShield of Tex.*,
No. 3:13-CV-2920-L, 2014 WL 4262164 (N.D. Tex. Aug. 29, 2014) ..................................10

*Innova Hosp. S.A., L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
995 F. Supp. 2d 587 (N.D. Tex. 2014)...................................................................................16

*Irwin v. Veterans Admin.*,
874 F.2d 1092 (5th Cir. 1989) .................................................................................................3

*J.M. Davidson, Inc. v. Webber*,
128 S.W.3d 223 (Tex. 2003)........................................................................................... 11, 14

*Jones v. Petty-Ray Geophysical, Geosource, Inc.*,
954 F.2d 1061 (5th Cir. 1992) .................................................................................................7

*LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*,
298 F.3d 348 (5th Cir. 2002) ...................................................................................................5

*Lone Star 24 HR ER Facility, LLC v Blue Cross & Blue Shield of Tex.*,
No. SA-22-CV-01090-JKP, 2025 WL 1889578 (W.D. Tex. July 2, 2025) .............................9

*Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*,
238 F.3d 363 (5th Cir. 2001) .................................................................................................19

*Massey v. Armco Steel Co.*,
652 S.W.2d 932 (Tex. 1983).................................................................................................21

*McLean v. Philip Morris*,
Nos. 2:96CV167-DF, 5:97CV-117, 1999 U.S. Dist. LEXIS 13551 (E.D. Tex.
1999)........................................................................................................................................3

*MedARC, LLC v. Cigna Behav. Health of Tex.*,
No. 3:20-CV-3687-N-BH, 2021 WL 3476810 (N.D. Tex. July 6, 2021) ................................3

*Mem'l Hermann Health Sys. v. Pennwell Corp. Med. And Vision Plan*,
No. 17–2364, 2017 WL 6561165 (S.D. Tex. Dec. 22, 2017)...................................................6

*MetroplexCore, L.L.C. v. Parsons Transp., Inc.*,
743 F.3d 964 (5th Cir. 2014) ................................................................................................15

*Mission Toxicology, L.L.C. v. Unitedhealthcare Ins. Co.*,
No. 5:17-CV-1016-DAE, 2018 WL 2222854 (W.D. Tex. Apr. 20, 2018) ........................ 9, 10

*Paris Emergency Ctr., LLC v. Blue Cross & Blue Shield of Tex.*,
No. 5:24-CV-00002-RWS, 2025 WL 3171163 (E.D. Tex. Nov. 12, 2025)...........................14

*Piney Woods Er III, LLC v. Blue Cross & Blue Shield of Tex.*,
No. 5:20-CV-00041-RWS, 2020 WL 13042507 (E.D. Tex. Oct. 2, 2020)............................14

*San Antonio Credit Union v. O'Connor*,
   115 S.W.3d 82 (Tex. 2003)............................................................................20

*Schnurr v. Preston*,
   No. 5:17-CV-512-DAE, 2018 WL 8584292 (W.D. Tex. May 29, 2018) ........................ 18, 19

*Sealed Appellant 1 v. Sealed Appellee 1*,
   625 F. App'x 628 (5th Cir. 2015) .....................................................................7

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ..........................................................................6

*Seville v. Maersk Line, Ltd.*,
   53 F.4th 890 (5th Cir. 2022) ...........................................................................7

*Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*,
   No. 5-16-CV-01094-FB-RBF, 2018 2018 WL 4211741 (W.D. Tex. Sep. 4,
   2018)......................................................................................................10

*Smart v. Prime Mortg. & Escrow, LLC*,
   No. 3:22-cv-00023-KC-LS, 2022 WL 17814239 (W.D. Tex. July 1, 2022)........................15

*Smith v. Skopos Fin., LLC*,
   No. 3:18-cv-2248-L-BN, 2019 WL 2374883 (N.D. Tex. Jan. 22, 2019).............................15

*Southern v. Goetting*,
   353 S.W.3d 295 (Tex. App. 2011, pet. denied) ...................................................11

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
   365 F.3d 353 (5th Cir. 2004) .........................................................................17

*St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*,
   No. CIV.A. H-08-1870, 2009 WL 47125 (S.D. Tex. Jan. 6, 2009)...................................8, 9

*Stone v. Nationwide Mut. Ins. Co.*,
   No. 1:21-CV-00960-LY, 2022 WL 627826 (W.D. Tex. Mar. 2, 2022)........................... 17, 18

*Sullivan v. Leor Energy, LLC*,
   600 F.3d 542 (5th Cir. 2010) ...........................................................................2

*Tango Transp. v. Healthcare Fin. Servs. LLC*,
   322 F.3d 888 (5th Cir. 2003) ...........................................................................5

*Tenet Healthsystem Deseret, Inc. v. Fortis Ins. Co.*,
   520 F. Supp. 2d 1184 (C.D. Cal. 2007)...............................................................12

*Thornton v. Dobbs*,
   355 S.W.3d 312 (Tex. App. 2011, no pet.)...........................................................11

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
  Civil Action No. 3:03-CV-2490-N, 2004 WL 3170789 (N.D. Tex. Nov. 15,
  2004)..................................................................................................................19

*Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Personnel Mgmt.*,
  220 F.3d 427 (5th Cir. 2000) ...............................................................................6

*U.S. v. Kindred Healthcare, Inc.*,
  No. 1:18-cv-00806-RP, 2020 WL 7771217 (W.D. Tex. Dec. 30, 2020) .........................17, 18

*United Biologics, L.L.C. v. Allergy & Asthma Network*,
  819 F. App'x 204 (5th Cir. 2020)...........................................................................20

*Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*,
  86 F. Supp. 2d 1155 (S.D. Fla. 2000), *aff'd sub nom.*, 284 F.3d 1174 (11th
  Cir. 2002)...........................................................................................................12

*VeroBlue Farms USA, Inc. v. Wulf*,
  465 F. Supp. 3d 633 (N.D. Tex. 2020)......................................................................4

*W. Grey Props., LLC v. Blue Cross & Blue Shield of Tex.*,
  No. H-24-1275, 2024 WL 4374128 (S.D. Tex. Oct. 2, 2024)...............................................13

*Williams v. Wells Fargo Bank, N.A.*,
  884 F.3d 239 (5th Cir. 2018) ...............................................................................11

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ...............................................................................19

*Windmill Wellness Ranch, L.L.C. v. Meritain Health, Inc.*,
  No. SA-20-CV-01388-XR, 2021 WL 2635845 (W.D. Tex. June 25, 2021)....................3, 5, 6

**Statutes**

29 U.S.C. §§ 1001 *et seq.* .........................................................................................*passim*

29 U.S.C. § 1132(a)(1)(B)..........................................................................................5

29 U.S.C. § 1132(e) ...................................................................................................6

**Other Authorities**

Fed. R. App. Proc. 32.1 ..............................................................................................3

Fed. R. Civ. P. 8..................................................................................................1, 10, 15

Fed. R. Civ. P. 8(a)(2) ...............................................................................................4

Fed. R. Civ. P. 9(b) ................................................................................................*passim*

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 1, 3, 6

Fed. R. Civ. P. 12(b)(2) .................................................................................................. 1, 4

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 9, 21

Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA")[1] respectfully submits this Motion to Dismiss Plaintiff Austin NeuroSpine, PLLC's ("Plaintiff") Second Amended Complaint ("SAC") [ECF No. 37], pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). In support, BCBSMA states as follows:

## I.    INTRODUCTION

Plaintiff brings six causes of action against BCBSMA (as well as various other licensees of the Blue Cross and Blue Shield Association (collectively, "Defendants")) related to alleged non-payment for unidentified medical services under an unidentified health insurance plan pursuant to unspecified rates of reimbursement. The Court should dismiss Plaintiff's SAC for several reasons. *First*, Plaintiff's alleged assignment of benefits fails to confer Plaintiff derivative standing because the BCBSMA plan in question prohibits assignment, thereby requiring dismissal of Plaintiff's claim for plan benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, as amended ("ERISA"). *Second*, Plaintiff fails to establish personal jurisdiction over BCBSMA for its state law claims. *Finally*, in the event that the Court finds that Plaintiff has standing to bring the ERISA claim, or that the Court has jurisdiction to hear the state law claims, because Plaintiff fails to satisfy the pleading standards required by Rules 8 and 9(b) as applicable to each of the causes of action, the Court should dismiss them for failure to state a claim.

## II.    FACTUAL BACKGROUND[2]

Plaintiff, a provider of neurological services and pre-surgical durable medical equipment in Travis County, Texas, alleges that it provided healthcare services to Defendants' insureds, and

---

[1] Although the SAC names "Blue Cross and Blue Shield of Massachusetts," the appropriate defendant is Blue Cross and Blue Shield of Massachusetts, Inc., which is the corporate entity that administered the plan at issue. BCBSMA is a not-for-profit medical service corporation organized under Massachusetts law.

[2] BCBSMA takes Plaintiff's allegations as true only for purposes of the present Motion and does not concede the truth of any of Plaintiff's allegations by reciting them here.

seeks reimbursement from Defendants for the services rendered. *See* SAC ¶¶ 17, 49. Notably, BCBSMA does not have any written agreement with Plaintiff, and according to Plaintiff's Claims Spreadsheet, only *one* patient at issue is a beneficiary of a health plan administered by BCBSMA (the "Plan"). *See id.* ¶ 17; *see also* ECF No. 38 ("Claims Spreadsheet").[3]

The Plan contains an unambiguous and binding anti-assignment provision, which expressly prohibits benefits under the Plan from being assigned to others, such as Plaintiff. The Plan document is attached to BCBSMA's Declaration in Support of this Motion. *See* Exhibit A, Declaration of Katherine Cloutier, ¶ 7, App. A0001-3; *see also* Ex. A-1, App. A0004-125.[4] Specifically, under the provision entitled "Assignment of Benefits," the Plan states as follows:

> You cannot assign any benefit or monies due from this health plan to any person, corporation, or other organization without *Blue Cross and Blue Shield's* written consent. Any assignment by you will be void. Assignment means the transfer of your rights to the benefits provided by this health plan to another person or organization. There is one exception. If Medicaid has already paid the health care provider, you can assign your benefits to Medicaid.

App. A0078 (emphasis in original).

Plaintiff brings this suit against BCBSMA and the other Defendants, conflating them all under the name "BCBS," for purported (1) violation of Section 502(a) of ERISA, (2) breach of

---

[3] Plaintiff did not attach a list of claims to the SAC, but did provide BCBSMA with the Claims Spreadsheet, which contains the insureds' names and dates of birth, the insureds' plans, dates of service, member ID/group numbers, claim numbers, and amounts received and billed. *See* ECF No. 38; SAC ¶¶ 15, 29 n.4, 48. Nowhere in the SAC or Claims Spreadsheet, however, does Plaintiff identify the terms of BCBSMA's plan that was allegedly violated or the services Plaintiff provided for which it now seeks payment.

[4] BCBSMA has provided an Appendix in support of its Motion, and references to the Appendix are indicated with the designation "App." Exhibit A-1 is the Plan document for BCBSMA's insured, which will also be referred to as the "Plan" herein. *See* App. A000-0125. The "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting S*canlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). "In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 854–55 (S.D. Tex. 2017), *aff'd sub nom. Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019). Accordingly, even though Plaintiff did not attach the Plan to the SAC, this Court can consider the Plan document attached to the Motion because the Plan is central to Plaintiff's claims.

2

contract; (3) negligent misrepresentation; (4) promissory estoppel; (5) fraud/fraudulent inducement; and (6) civil conspiracy. *See* SAC ¶¶ 29-47.

### III.    LEGAL STANDARD

**A.    Motion to Dismiss for Lack of Standing.**

The Fifth Circuit considers a motion to dismiss an ERISA claim for lack of standing a "jurisdictional matter" "subject to challenge through Rule 12(b)(1)." *MedARC, LLC v. Cigna Behav. Health of Tex.*, No. 3:20-CV-3687-N-BH, 2021 WL 3476810, at *4 (N.D. Tex. July 6, 2021) (internal citation and quotations omitted); *see also Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) (not designated for publication)[5] (where a provider's assignments of benefits were challenged, Rule 12(b)(1) applied, and the provider bore the burden of proof to establish standing by a preponderance of the evidence). When "Defendants rely on documents outside Plaintiffs' amended complaint—namely the Plan . . . —in bringing their Motion to Dismiss, their Rule 12(b)(1) attack is on factual grounds," requiring the plaintiff to prove standing by a preponderance of the evidence. *Windmill Wellness Ranch, L.L.C. v. Meritain Health, Inc.*, No. SA-20-CV-01388-XR, 2021 WL 2635845, at *3 (W.D. Tex. June 25, 2021) (internal citations omitted); *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).

**B.    Motion to Dismiss for Lack of Personal Jurisdiction.**

If a court lacks personal jurisdiction over a party, it must dismiss the case as to that party. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff has the burden to make out a prima facie case of personal jurisdiction over the defendant. *VeroBlue*

---

[5] While *Cell Science Systems* was a case not designated for publication, the case includes a discussion of its prior precedent, including cases that discuss jurisdictional standing and ERISA. *See McLean v. Philip Morris*, Nos. 2:96CV167-DF, 5:97CV-117, 1999 U.S. Dist. LEXIS 13551, at *21 (E.D. Tex. 1999) (unpublished opinions may be persuasive authority) (citing 5th Cir. R. 47.5.4); *see also* Fed. R. App. Proc. 32.1.

3

*Farms USA, Inc. v. Wulf,* 465 F. Supp. 3d 633, 660 (N.D. Tex. 2020). To meet this burden, a plaintiff must provide more than mere "conclusory allegations." *Harbour v. Heyl Truck Lines, Inc.*, No. 3:24-CV-0183-D, 2024 WL 1317805, at *2 (N.D. Tex. Mar. 27, 2024) (citation omitted). In fact, "the Court need only accept as true uncontroverted allegations in the complaint if those allegations are not conclusory." *DLR, LLC v. Montoya*, 465 F. Supp. 3d 676, 680 (N.D. Tex. 2020). A state can "authorize its courts to exercise personal jurisdiction over an out-of-state defendant" only "if the defendant has certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation and quotation omitted).

**C.      Motion to Dismiss for Failure to State a Claim.**

To state a valid claim for relief and survive a 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 548-49 (5th Cir. 2005). Specifically, Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

**IV.      ARGUMENT**

**A.      Plaintiff Lacks Standing to Bring Its ERISA Cause of Action.**

Plaintiff lacks standing to bring Count I because the Plan, which is governed by ERISA, prohibits participants and beneficiaries from assigning their right to sue under ERISA. *See* App. A0078. An action to recover benefits under ERISA may only be brought by (1) a participant or beneficiary of a plan, or (2) a healthcare provider with a valid assignment. *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890-91 (5th Cir. 2003) (noting that section 502(a) only

4

authorizes "a participant or beneficiary" to bring a civil suit); *see also* 29 U.S.C. § 1132(a)(1)(B). Because it is not a participant or beneficiary, Plaintiff must establish that it has derivative standing by proving that it possesses a valid assignment of a participant or beneficiary's right to assert an ERISA claim. *See Tango Transp.*, 322 F.3d at 889, 892.

Plans may prohibit participants or beneficiaries from assigning their rights to sue under the plans. *See Windmill Wellness*, 2021 WL 2635845, at *5 (provider lacked standing because anti-assignment clause in ERISA-governed health plan was valid and enforceable); *Experience Infusion Ctrs., LLC v. Flowers Specialty, Foodservice Sales, Inc.,* No. H-19-1721, 2020 WL 32331, at *2 (S.D. Tex. Jan. 2, 2020) (similar). Indeed, the Fifth Circuit enforces unambiguous anti-assignment provisions to preclude a provider's standing where the provider's purported standing comes solely from being the putative assignee of patients insured by a defendant. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc*., 298 F.3d 348, 352 (5th Cir. 2002) (applying "canons of contract interpretation" to the plain language of an "anti-assignment clause leads inexorably to the conclusion that any purported assignment of benefits from [the subscriber] to [the provider] would be void."); *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 256 (5th Cir. 2019) (similar); *Cell Sci. Sys.*, 804 F. App'x at 264-65. Indeed, "a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Personnel Mgmt*., 220 F.3d 427, 431 (5th Cir. 2000).

The anti-assignment provision in the Plan plainly prohibits Plaintiff from pursuing an ERISA claim in this manner. *See Windmill Wellness*, 2021 WL 2635845, at *4-5. Accordingly, the Court should give effect to the Plan's terms, enforce the anti-assignment provision, and dismiss

Count I for lack of standing. *See* Fed. R. Civ. P. 12(b)(1); *Windmill Wellness*, 2021 WL 2635845, at *5; *see also Mem'l Hermann Health Sys. v. Pennwell Corp. Med. And Vision Plan*, No. 17–2364, 2017 WL 6561165, at *10 (S.D. Tex. Dec. 22, 2017). [6]

## B.   Plaintiff Fails to Establish Personal Jurisdiction as to Its Non-ERISA Causes of Action.

In addition to dismissing Plaintiff's ERISA claim, the Court should dismiss Plaintiff's state law claims because this Court lacks personal jurisdiction over BCBSMA for those claims. Though Fifth Circuit precedent establishes nationwide personal jurisdiction over ERISA defendants as a by-product of ERISA's nationwide service of process, personal jurisdiction over ERISA claims does not establish personal jurisdiction over non-ERISA claims. *See* 29 U.S.C. § 1132(e); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 n.6 (5th Cir. 2006) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim." (quotation omitted)). Because BCBSMA is not subject to either general or specific personal jurisdiction for Plaintiff's state law claims, the claims should be dismissed.

### 1.   BCBSMA Is Not Subject to General Jurisdiction in Texas.

BCBSMA is not subject to this Court's general jurisdiction. The Court may exercise general jurisdiction when a defendant's affiliations with the forum state are so continuous and systematic as to render it essentially at home in the forum state. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022). The Fifth Circuit has provided that "generally, a corporation's

---

[6] The Plan further requires that members exhaust administrative remedies prior to filing suit, and that the time limit to bring legal action is "within two years after the date of the decision of the final internal appeal of the service or claim denial." App. A0080-81. Based on BCBSMA's investigation of the claim at issue, even if Plaintiff were authorized to bring this suit (it is not), it never filed an internal appeal, nor is this suit brought within the limitations period given that the claim was denied in 2020.

6

'home' falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020) (citation omitted). Indeed, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id.* at 336 (citations omitted); *see also Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) ("The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state."). Because Plaintiff does not allege that BCBSMA is incorporated or has its principal place of business in Texas and does not allege any facts to support an exceptional case for general jurisdiction, Plaintiff fails to establish general jurisdiction over BCBSMA. *See* SAC ¶ 11; *see also* App. A0002, ¶ 4.

Nor are there any other allegations in the SAC that suggest that any of BCBSMA's contacts with Texas are substantial, continuous, and systematic—much less that BCBSMA is essentially at home in Texas. The conclusory allegation that each and every defendant, including BCBSMA, "is a corporation who regularly and systematically conducted business in Texas when contract, tortious conduct, and transactions with [Plaintiff] made the basis of this case occurred," with nothing more, is not sufficient to confer general jurisdiction. *Id.* ¶ 13; *see Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) ("In evaluating whether the plaintiffs have presented a prima facie case of personal jurisdiction, we will not credit conclusory allegations, even if uncontroverted.") (citations and quotations omitted).

### 2. BCBSMA Is Not Subject to Specific Jurisdiction in Texas.

Plaintiff's allegations are similarly insufficient to establish specific personal jurisdiction over BCBSMA in Texas. Indeed, Plaintiff's only theory to support specific personal jurisdiction over BCBSMA is expressed in paragraph 18 of the SAC, which equivocally provides, in part, "BCBS Texas acted in every Healthcare Services claim's adjudication process as did HCSC

through BCBS Texas or its other interconnected or similarly licensed regional entities – [including] BCBSMA," ostensibly alluding to BCBSMA's participation in the BlueCard program along with the other out-of-state Defendants. SAC ¶ 18.  However, courts have rejected the notion that the BlueCard program by itself provides a basis for specific jurisdiction, explaining that when a plan joins the BlueCard program, it "has not contracted directly with a Texas entity but instead has joined a national organization that allows it to obtain coverage and processing in all of the Blue Card Program members' states. There is no '[Texas] contract, a contract between the parties, [or] a substantial connection to [Texas].'" *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *26 (S.D. Tex. Jan. 6, 2009) (citation and quotations omitted).[7] In other words, "merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services." *Id.* at *8; *see also Lone Star 24 HR ER Facility, LLC v Blue Cross & Blue Shield of Tex.*, No. SA-22-CV-01090-JKP, 2025 WL 1889578, at *5 (W.D. Tex. July 2, 2025) (dismissing state law cause of action because defendants' "participation in BlueCard Program or by facilitation of healthcare services" in Texas did not establish specific jurisdiction).

Accordingly, mere knowledge and approval of treatment with an in-state provider does not subject an out-of-state insurer to personal jurisdiction, nor does participation in the BlueCard program. *Choice Healthcare, Inc.*, 615 F.3d at 368-72. Thus, the Court does not have personal jurisdiction over BCBSMA in this matter for Counts II through VI.

---

[7] Indeed, district courts across the country have held that out-of-state health plans are not subject to specific personal jurisdiction in another state based on their participation in the BlueCard program, a result that the Fifth Circuit has approved. *See Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 371-72 (5th Cir. 2010); *see also Angel Jet Servs., LLC v. Health & Welfare Plan of Hollis Roofing*, No. CV-09-02131-PHX-ROS, 2010 2010 WL 11405083, at *2-3 (D. Ariz. Apr. 1, 2010) (no personal jurisdiction based on participation in BlueCard program); *Bayada Nurses, Inc. v. Blue Cross Blue Shield of Mich.*, No. CIV. A. 08-1241, 2008 WL 2945388, at *4-5 (E.D. Pa. July 30, 2008) (same); *C.C. v. Cal. Physicians' Serv.*, No. 4:21- cv-00010-DN-PK, 2021 WL 3207853, at *4 (D. Utah July 29, 2021) (similar).

**C.      The Court Should Dismiss the SAC for Plaintiff's Failure to State a Claim for Any of Its Causes of Action.**

Assuming *arguendo* that Plaintiff has standing to bring and the Court has jurisdiction to adjudicate Plaintiff's claims, the Court should dismiss the SAC in its entirety pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim for relief for any of its six causes of action.

**1.      Plaintiff's Claim for Benefits Under ERISA Fails to State a Claim for Relief.**

Plaintiff's request for benefits under ERISA fails because Plaintiff does not specify the Plan term(s) under which benefits are purportedly owed for the services it provided. "[T]o sufficiently set forth enough facts to state a Section 502(a) claim, the [complaint] must contain information regarding (1) the insured's name; (2) the plan or the terms of the insured's plan that was allegedly violated; and (3) the services provided under the plan." *Mission Toxicology, L.L.C. v. Unitedhealthcare Ins. Co.*, No. 5:17-CV-1016-DAE, 2018 WL 2222854, at *6 (W.D. Tex. Apr. 20, 2018). The benefits payable under Section 502 are "limited to those specified in the ERISA plan," thus, plaintiffs bringing claims for ERISA benefits must "provide enough facts about an ERISA plan's provisions to make . . . [the benefits] claim plausible and give the defendant notice as to which provisions it allegedly breached." *Id.*; *see also Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, No. 5-16-CV-01094-FB-RBF, 2018 2018 WL 4211741, at *4 (W.D. Tex. Sep. 4, 2018) (collecting cases) (quotations omitted); *Infectious Disease Drs., P.A. v. BlueCross BlueShield of Tex.*, No. 3:13-CV-2920-L, 2014 WL 4262164, at *3 n.2 (N.D. Tex. Aug. 29, 2014) (ERISA cause of action was not adequately pled because the complaint did not include allegations of (i) the treatments received; and (ii) the plans' terms); *Mission Toxicology*, 2018 WL 2222854, at *6 (plaintiffs failed to state a Section 502 claim because they failed to identify "information regarding the various plans at issue *and which terms within those specific plans*" the defendant purportedly violated) (emphasis added).

9

Here, Plaintiff contends that it is entitled to benefits from BCBSMA based on a failure to pay for unidentified "Healthcare Services" pursuant to unidentified plan terms for a single benefit claim. *See* SAC ¶ 30. The closest Plaintiff comes to alleging a plan term is that the rates of payment under the many plans at issue are "70-90% of the amount billed." *Id.* However, given the number of purported plans at issue with presumably different terms, this equivocal allegation is insufficient to fulfill Plaintiff's notice pleading obligations to BCBSMA, as required by Rule 8. *See Sky Toxicology, Ltd.*, 2018 2018 WL 4211741, at *5 (to state a claim, a plaintiff "must explain *how* the plans here defined these key terms (at least on a representative level) and *why* the services at issue in this litigation satisfied these definitions.") (cleaned up) (emphasis in original). It is also demonstrably false as it relates to the Plan, which specifies that the Plan generally pays for services received from out-of-network providers outside of Massachusetts at "150% of the Medicare reimbursement rate." App. A0019. Conversely, nothing in the Plan requires it to pay "70-90% of the amount billed." *See generally* App. A0004-125.

Because Plaintiff has failed to allege the requisite facts to support its ERISA benefit claim, the Court should dismiss Count I.

### 2.    Plaintiff's Breach of Contract Claim Fails to State a Claim For Relief.

Plaintiff's breach of contract claim fails because it fails to establish the existence of a valid contract between Plaintiff and BCBSMA. Specifically, Plaintiff does not (i) assert with specificity any terms of the parties' purported oral or implied-in-fact agreement; (ii) allege that it ever even discussed reimbursement rates with BCBSMA; or (iii) identify facts supporting that BCBSMA breached the purported agreement.

To state a breach of contract claim under Texas law, a plaintiff must plead: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the

breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (citations and quotations omitted). To establish a valid contract, the plaintiff must "allege facts showing: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Bey v. Rosamond*, No. 4:21-cv-302-ALM-KPJ, 2022 WL 636728, at *3 (E.D. Tex. Feb. 25, 2022) (citations and quotations omitted). Moreover, "[c]onsideration is an essential element for a valid, enforceable contract." *J.M. Davidson, Inc. v. Webber*, 128 S.W.3d 223, 235 (Tex. 2003) (citations omitted). These elements must be met for both written and oral contracts to be binding. *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App. 2011, no pet.). The terms of an oral contract "must be definite, certain, and clear as to all essential terms and, if they are not, the oral contract fails for indefiniteness." *Southern v. Goetting*, 353 S.W.3d 295, 299-300 (Tex. App. 2011, pet. denied) (collecting cases). The elements of a claim for breach of implied-in-fact contract and express contract are identical. *Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015) (citations omitted).

### a.    Plaintiff Fails to Allege a Meeting of the Minds on Price.

Plaintiff relies primarily on the parties' communications during prior authorization requests to allege the existence of a purported agreement. Essentially, Plaintiff alleges that: (i) simply by pre-authorizing services, BCBSMA "promised" to pay for certain unspecified healthcare services "at the maximum [out-of-network] [p]rovider rate *or* at the reasonable value based on the parties' prior course of dealing at 70-90% of amounts billed or charged"; which (ii) Plaintiff accepted either verbally or through performance of healthcare services. *See* SAC ¶ 33 (emphasis added). This, alone, does not establish the existence of any agreement (express or implied-in-fact) between BCBSMA and Plaintiff.

11

Courts nationwide have "solidly rejected" the proposition that authorization of healthcare services by an insurer through the routine process known as prior authorization (also called pre-certification or pre-authorization) is sufficient to create an enforceable agreement between a medical provider and the insurer. *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, No. 9:18-CV-81761, 2020 WL 3547047, at *8 (S.D. Fla. June 30, 2020). *See also Tenet Healthsystem Deseret, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007) (benefits verification "cannot be construed as a binding contractual agreement"); *Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1164-65 (S.D. Fla. 2000) (similar), *aff'd sub nom.*, 284 F.3d 1174 (11th Cir. 2002); *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) (similar); *Chiron Recovery*, 2020 WL 3547047, at *7 (similar); *Ambulatory Infusion Therapy Specialists, Inc. v. Unicare Life and Health Ins. Co.*, Civ. No. H-06-1857, 2007 WL 1520994, at *2-3 (S.D. Tex. May 22, 2007) (similar). This is because even when healthcare services are pre-authorized, an insurer must still review whether the claims were billed correctly, whether the services were performed as authorized, and other aspects of the claim, reserving the right to deny the claim if the insurer identifies problems. *E.g., Armijo v. ILWU-PMA Welfare Plan*, No. CV 15-01403-MWF (MRWx), 2017 WL 10718576, at *2-3 (C.D. Cal. Aug. 1, 2017).

Here, Plaintiff broadly alleges that payment rates were promised by "Defendants" during prior authorization discussions, yet, critically, fails to allege any specifics regarding these communications, including with respect to BCBSMA. For example, Plaintiff does not provide *any* detail about the dates, locations, representatives, or the actual content of any such discussions with BCBSMA. *See generally* SAC. Instead, Plaintiff relies on its alleged "prior course of dealing" with perhaps some or all Defendants—without any facts to suggest that BCBSMA was involved in any

prior course of dealing or that Plaintiff even ever previously dealt with BCBSMA—to insinuate that BCBSMA "promised" to pay the same rates for all future claims. *Id.* ¶ 33. Compounding the uncertainty, Plaintiff alleges that Defendants agreed to pay "the maximum [out-of-network] [p]rovider rate" *or* "70-90% of amounts billed or charged," without specifying which Defendant agreed to which rate or for which patient. *Id.* The SAC does not allege that BCBSMA ever represented *anything* to Plaintiff, much less that it would pay Plaintiff at a specific rate for the single claim at issue, and thus "there has been no meeting of the minds." *W. Grey Props., LLC v. Blue Cross & Blue Shield of Tex.*, No. H-24-1275, 2024 WL 4374128, at *3 (S.D. Tex. Oct. 2, 2024) (finding the failure to reach some understanding as to price, an essential contract term, implied a lack of meeting of the minds).

Because Plaintiff has failed to allege any definite facts supporting the terms of the parties' purported oral or implied-in-fact agreement, it has failed to sufficiently plead even the existence of such an agreement, much less a breach thereof. *See Avialae S. De R.L. De C.V. v. Cummins Inc.*, 472 F. Supp. 3d 340, 348 (W.D. Tex. 2020) (dismissing contract claim where plaintiff failed to plead facts regarding prices or a proposal because there lacked adequate facts to allow the Court to infer acceptance and mutual assent); *Paris Emergency Ctr., LLC v. Blue Cross & Blue Shield of Tex.*, No. 5:24-CV-00002-RWS, 2025 WL 3171163, at *4 (E.D. Tex. Nov. 12, 2025) (dismissing providers' implied contract claim against a payor because providers failed to plead an agreement regarding the rate of reimbursement for medical services rendered).

### b.    Plaintiff Fails to Allege an Exchange of Consideration.

The mutual exchange of consideration is another essential element of a breach of contract claim which is lacking here. *J.M. Davidson, Inc.*, 128 S.W.3d at 235. Plaintiff does not, and cannot, allege that it conferred any consideration to BCBSMA as "no benefit is conferred upon an insurer through the relationship between a healthcare provider and its insured." *Piney Woods Er III, LLC*

13

*v. Blue Cross & Blue Shield of Tex.*, No. 5:20-CV-00041-RWS, 2020 WL 13042507, at *7 (E.D. Tex. Oct. 2, 2020) (citing *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) ("Even if [the insurer] received some benefit as a result of [the provider] providing medical services to its insureds, a proposition the court finds dubious, [the provider's] services were rendered to and for its patients, not [the insurer].")). The only benefits that Plaintiff alleges it conferred are the medical services that it provided to BCBSMA's one member, *not* to BCBSMA. Accordingly, Plaintiff fails to allege any facts supporting consideration.

**c.      Plaintiff Fails to Specify What BCBSMA Did in Breach of the Purported Agreement.**

Plaintiff conflates the various Defendants and fails to identify what contract term BCBSMA specifically allegedly agreed to or breached. Courts routinely dismiss breach of contract claims when a plaintiff's complaint does not plausibly allege facts sufficient to explain how any *particular* defendant breached any *particular* contract term. *See, e.g., Black v. Experian Info. Sols., Inc.*, No. 4:21 -CV-04231, 2023 WL 2267266, at *7 (S.D. Tex. Feb. 28, 2023) (noting that the complaint "does not specify which particular defendant(s) breached its contract(s)," and dismissing breach of contract claim because "there are no facts to support the contract claim and Plaintiff did not present evidence of a contract between it and either [of the defendants]"); *Smart v. Prime Mortg. & Escrow, LLC*, No. 3:22-cv-00023-KC-LS, 2022 WL 17814239, at *3 (W.D. Tex. July 1, 2022) (dismissing contract claim because plaintiff "fails to allege facts that explain how any particular defendant breached *any* particular contract provision") (emphasis in original).

Plaintiff's Claims Spreadsheet does not cure the SAC's defects. Although the SAC purports to incorporate the Claims Spreadsheet by reference, the Claims Spreadsheet does not identify the alleged terms of any implied contract or BCBSMA's conduct in breach of those terms. *See Smith v. Skopos Fin., LLC*, No. 3:18-cv-2248-L-BN, 2019 WL 2374883, at *6 (N.D. Tex. Jan. 22, 2019)

14

(finding dismissal of complaint, including a breach of contract claim, appropriate where plaintiffs named all the defendants as "Defendant," failing to meet the pleading requirements of Rule 8).

### 3.    Plaintiff's Promissory Estoppel Claim Fails to State a Claim for Relief.

Plaintiff's promissory estoppel claim fails because it does not establish any promise by BCBSMA, much less that it was foreseeable that Plaintiff would detrimentally rely on said promise. For a promissory estoppel claim, a plaintiff must plead: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee. *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014).

As noted above, Plaintiff's allegations do not identify what, specifically, BCBSMA allegedly said, including whether BCBSMA *actually* represented to Plaintiff that it would pay a specific rate. In that same vein, Plaintiff's promissory estoppel claim vaguely alleges that: (1) Defendants "made promises to… pay for the Healthcare Services"; (2) Plaintiff "reasonably and substantially relied on these promises… to its detriment by providing the extremely valuable Healthcare Services"; and (3) Plaintiff's reliance was foreseeable. SAC ¶ 37. Importantly, not only does Plaintiff fail to assert that <u>BCBSMA</u> promised to pay a specific rate, it at different points alleges that the various Defendants agreed to pay the "maximum [out-of-network] [p]rovider rate *or* a reasonable rate" *or* the "maximum [out-of-network] [p]rovider rate… *and* a reasonable rate" *or* the "maximum [out-of-network] [p]rovider rate *or* the reasonable value" *or* simply, the "maximum [out-of-network] [p]rovider benefits," without specifying what any specific Defendant promised, if anything. *Id.* ¶¶ 18, 33, 40 (emphasis added). Texas courts conclude a plaintiff fails to state a claim for promissory estoppel where "pleadings contain *limited* factual allegations regarding the promises made," that "merely recite the elements" without alleging "sufficient facts regarding the remaining elements to raise their right to relief above the speculative level." *See*

15

*Innova Hosp. S.A., L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 607 (N.D. Tex. 2014) (emphasis added).

Moreover, Plaintiff fails to allege foreseeability of reliance because pre-authorization of services does not make it foreseeable to BCBSMA that Plaintiff would assume it was guaranteed to be paid at any rate, much less at a specific rate.[8] *See, e.g., Fustok v. UnitedHealth Grp., Inc.*, No. 12-cv-787, 2012 WL 12937486, at *4-5 (S.D. Tex. Sep. 6, 2012). As a result, the Court should dismiss Plaintiff's cause of action for promissory estoppel.

**D.      Plaintiff's Fraud-Based Claims Fail to State a Claim for Relief.**

Plaintiff's claims for fraud/fraudulent inducement, negligent misrepresentation, and civil conspiracy are premised on fraud, yet fail to satisfy the heightened pleading standards of Rule 9(b). To survive a motion to dismiss claims sounding in fraud, the plaintiff must plead with particularity all the circumstances constituting fraud. Fed. R. Civ. P. 9(b). At a minimum, a plaintiff is required to allege "the who, what, when, where, and how" with particularity to survive a motion to dismiss. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quotations omitted); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). Where multiple claims rest upon the same "fraud," Rule 9(b) applies to each claim for relief. *See id.* at 796-798 (reversing denial of motion to dismiss under Rule 9(b)). Importantly, "[p]leadings that fail to distinguish among defendants and allege the role of each generally are prohibited when a complaint is subject to Rule 9(b)." *Stone v. Nationwide Mut. Ins. Co.*, No. 1:21-CV-00960-LY, 2022 WL 627826, at *5 (W.D. Tex. Mar. 2, 2022); *U.S. v. Kindred Healthcare, Inc.*, No. 1:18-cv-00806-RP, 2020 WL 7771217, at *6 (W.D. Tex. Dec. 30, 2020)).

---

[8] Plaintiff asserts that certain representations were made during the appeal process, *after* Plaintiff had already provided healthcare services, and so there could be no detrimental reliance on such alleged representations.

1.      **Plaintiff Improperly Group-Pleads Its Fraud-Based Claims, Thereby Failing to Satisfy Rule 9(b).**

At the outset, Plaintiff group-pleads its allegations of fraud against all Defendants, and at no point specifies what BCBSMA allegedly did, if anything. *See* SAC ¶ 35 (accusing "BCBS" of negligent misrepresentation); *id.* ¶¶ 40-43 (similar allegations of fraud/fraudulent inducement); *id.* ¶¶ 44-47 (similar allegations of civil conspiracy). Avoiding its obligation to plead with specificity, Plaintiff merely points to the Claims Spreadsheet.[9] *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 370 (5th Cir. 2004) (conclusory allegations that "[D]efendants knew the [statements] were false [impermissibly groups Defendants together] and fails to plead facts with the requisite specificity to generate a strong inference of scienter."). However, the Claims Spreadsheet does not offer any detail about any of the alleged representations or who made them. The Court should dismiss Plaintiff's fraud-based claims for these reasons alone. *See Stone*, 2022 WL 627826, at *5 (dismissing fraud claim because plaintiff did not "differentiate among Defendants" or provide the who, what, where, when and why); *Kindred Healthcare*, 2020 WL 7771217, at *6 (similar).

2.      **Plaintiff Cannot State a Claim for Fraud/Fraudulent Inducement.**

Not only does Plaintiff fail to provide the "who," it also fails to allege the "when," "where," and "how" of any purported fraud by BCBSMA. "To plead fraud or fraudulent inducement with particularity, a plaintiff must include the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained

---

[9] Under its fraud/fraudulent inducement claim, Plaintiff attempts to differentiate between the Defendants by referencing the Claims Spreadsheet and alleging that certain Defendants, based on the geographic designation of each Member-Patient's plan, made the purported representations, while asserting that representatives of BCBS Texas, a wholly separate entity from BCBSMA, made representations as to all claims. *See* SAC ¶ 40. This convoluted allegation serves only to further complicate—not clarify—the issue, and fails to support any allegation that BCBSMA made any purported misrepresentations.

17

thereby." *Schnurr v. Preston*, No. 5:17-CV-512-DAE, 2018 WL 8584292, at *3 (W.D. Tex. May 29, 2018) (citation and quotations omitted). Details of each alleged misstatement or omission "must be specifically demonstrated and cannot be presumed from vague allegations." *Id.* (citations omitted).

Plaintiff alleges that "as part of [their] scheme," to induce Plaintiff into entering into an agreement, Defendants made "material and false" representations that they would either pay the "maximum [out-of-network] [p]rovider benefits" *or* "a reasonable amount based on prior dealings between the parties at 70-90% of the amount charged or billed." SAC ¶¶ 41-43. Plaintiff's continued failure to allege what BCBSMA allegedly promised to pay (if anything) fails to meet Rule 9(b)'s stringent requirements. Plaintiff similarly does not supply any information as to the "when," "where," or "how" these vaguely described representations were made, and thus the SAC fails to allege that BCBSMA actually told Plaintiff that it would reimburse any amount—or, instead, whether Plaintiff merely inferred that from some "course of dealing." Notably, Plaintiff asserts that many of these alleged representations occurred "during the time period of the Claim Appeal process," which would have occurred <u>after</u> Plaintiff had already rendered services, in which case Plaintiff could not have relied on such representations. SAC ¶ 40; *see Schnurr*, 2018 WL 8584292, at *4 (plaintiff failed to plead fraud with particularity as the plaintiff "did not identify a particular fraudulent statement or the date or time the purported statement was made."). Plaintiff's vague allegations fail Rule 9(b)'s specificity requirement, and the Court should dismiss the fraud/fraudulent inducement claim.

### 3.    Plaintiff Cannot State a Claim for Negligent Misrepresentation.

Because Plaintiff's fraud claim fails, so does its claim for negligent misrepresentation. Where a plaintiff's claims for fraud and negligent misrepresentation are based on the same set of allegations, Rule 9(b) also applies to the negligent misrepresentation claim. *See Benchmark,* 343

18

F.3d at 723; *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Here, Plaintiff's allegations in support of its negligent misrepresentation claim are even weaker than its fraud allegations. *Compare* SAC ¶ 35 (negligent misrepresentation claim) *with* ¶¶ 40-43 (fraud and fraudulent inducement claim). As with its fraud claim, Plaintiff employs improper group pleading and fails to satisfy the heightened pleading standard of Rule 9(b) for its negligent misrepresentation claim, and the Court should similarly dismiss it. *See Berry*, 608 F. Supp. 2d at 799.

### 4.      Plaintiff Cannot State a Claim for Civil Conspiracy.

Rule 9(b)'s particularity requirement also governs Plaintiff's civil conspiracy claim because that claim is based on alleged fraud. *See Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (Rule 9(b) applies "to all averments of fraud, whether they are part of a claim of fraud or not"); *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, Civil Action No. 3:03-CV-2490-N, 2004 WL 3170789 at *2 (N.D. Tex. Nov. 15, 2004) (citation omitted). For a claim of civil conspiracy, the plaintiff must establish: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *United Biologics, L.L.C. v. Allergy & Asthma Network*, 819 F. App'x 204, 208 (5th Cir. 2020) (citation omitted).

According to Plaintiff, Defendants, "including BCBS Texas, Blue Cross California, Blue Shield California, HCSC, and other named defendants," entered into a conspiracy to induce Plaintiff to provide healthcare services without payment in turn. SAC ¶ 45. Not only does Plaintiff fail to mention BCBSMA by name at all, but this vague and conclusory allegation does not meet Rule 9(b)'s particularity standard because it does not allege a meeting of the minds or an unlawful overt act with any specificity.

To establish a meeting of the minds underlying a civil conspiracy, the plaintiff must allege a "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose

by unlawful means." *Chapman v. Newrez, LLC*, No. 4:21-cv-03711, 2023 WL 2247053, at *3 (S.D. Tex. Feb. 27, 2023) (citations omitted). Plaintiff only asserts in conclusory fashion that Defendants "agreed to a conspiracy to induce" it to provide services to the insureds, and "then refuse to pay as agreed or as required," and that Defendants "agreed to this unlawful objective and acted in concert." SAC ¶¶ 45-46. This does not establish a meeting of the minds. *See San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 91 (Tex. 2003). Indeed, Plaintiff does not provide *any* facts about BCBSMA's alleged agreement to join a conspiracy. *See Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 380 (5th Cir. 2017); *Chapman*, 2023 WL 2247053, at *3 (similar). Nor does it seem likely to be able to do so, given that BCBSMA is only alleged to have underpaid a single claim.

Further, Plaintiff has not alleged that BCBSMA participated in an unlawful and overt act. "[T]he unlawful, overt act of the fourth element [of civil conspiracy] depends on participation in some underlying tort." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 582 (N.D. Tex. 2024) (quotation marks omitted). In other words, a plaintiff must plead with particularity an outward act done in furtherance of the fraud. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Plaintiff's conclusory allegation that Defendants "agreed to a conspiracy to induce" Plaintiff to provide services while "never intend[ing] to pay" does not plausibly allege that BCBSMA took any outward act in furtherance of a fraud. SAC ¶ 45. And it certainly does not establish the who, what, where, when, and why required under Rule 9(b). *Benchmark,* 343 F.3d at 724. Accordingly, Plaintiff fails to meet not only Rule 9(b)'s heightened standard, but also Rule 12(b)(6)'s plausibility standard, and thus the Court should dismiss Plaintiff's civil conspiracy claim.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's SAC in its entirety with prejudice as against BCBSMA and grant any other relief the Court deems necessary and just.

20

DATED: January 16, 2026                Respectfully submitted,

                                       */s/  Saheli Chakrabarty*
                                       Martin J. Bishop
                                       Texas State Bar No.  24086915
                                       Saheli Chakrabarty
                                       Texas State Bar No.  24103778
                                       Crowell & Moring LLP
                                       9735 Carnegie Dr.
                                       Dallas, TX 75228
                                       Telephone: +1.312.379.4206
                                       mbishop@crowell.com
                                       schakrabarty@crowell.com

                                       Thomas C. Hardy (*Pro Hac Vice*)
                                       Crowell & Moring LLP
                                       455 N. Cityfront Plaza Drive, Suite 3600
                                       Chicago, IL 60611
                                       Telephone: +1.312.321.4200
                                       thardy@crowell.com

                                       *Counsel for Blue Cross and Blue Shield of
                                       Massachusetts, Inc.*

21

## CERTIFICATE OF SERVICE

I certify that on January 16, 2026, I electronically filed the foregoing document with the Clerk of Court of the United States District Court for the Western District of Texas, using the CM/ECF filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

/s/ Saheli Chakrabarty